NO. 15-16280

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

In re: TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST
LITIGATION,

DONALD WORTMAN, individually and on behalf of all others similarly situated,
*Plaintiff-Appellee,*

AMY YANG,
*Objector-Appellant,*

v.

SOCIETE AIR FRANCE; MALAYSIAN AIRLINE SYSTEM BERHAD;
SINGAPORE AIRLINES LIMITED; VIETNAM AIRLINES COMPANY
LIMITED; JAPAN AIRLINES COMPANY, LTD.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California, No. 3:07-cv-05634 CRB

Opening Brief of Appellant Amy Yang

COMPETITIVE ENTERPRISE INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
Theodore H. Frank
Anna St. John
1899 L Street NW, 12th Floor
Washington, D.C. 20036
(202) 331-2263
ted.frank@cei.org
*Attorneys for Objector-Appellant Amy Yang*

## Corporate Disclosure Statement (FRAP 26.1)

Pursuant to the disclosure requirements of FRAP 26.1, Amy Yang declares that she is an individual and, as such, is not a subsidiary or affiliate of a publicly owned corporation and there is no publicly held corporation that owns ten percent or more of any stock issued by her.

# Table of Contents

Corporate Disclosure Statement (FRAP 26.1) .................................................. i

Table of Contents .............................................................................................. ii

Table of Authorities ........................................................................................ iv

Statement of Subject Matter and Appellate Jurisdiction .................................. 1

Statement of the Issues .................................................................................... 2

Standard of Review .......................................................................................... 3

Statutes and Rules ............................................................................................ 4

Statement of the Case ...................................................................................... 6

     A.    A putative class of purchasers of transpacific passenger travel sue
multiple defendants. ............................................................................. 6

     B.    Additional parties settle. ....................................................................... 8

     C.    Yang objects to the settlements and class certification ........................ 10

     D.    The court overrules Yang's objection and approves the settlements. .... 13

Summary of Argument ..................................................................................... 14

Preliminary Statement ..................................................................................... 16

Argument ........................................................................................................ 17

I.     The class certifications of a single settlement class must be reversed as a
matter of law because the settlements inappropriately treat all class members
identically despite facing materially different affirmative defenses, creating
intraclass conflicts that preclude a finding of adequate representation under
Rule 23(a)(4) because of the lack of separate representation. ............................ 17

     A.    A district court must protect absent class members' interests ................ 19

     B.    JAL class members who purchased U.S.-originating air travel have
qualitatively superior claims to class members who purchased
foreign-originating air travel ....................................................................... 20

     C.    Class members who purchased air travel directly from the airlines
have qualitatively superior claims to class members who purchased
air travel indirectly and arguably would have no cause of action. ........... 23

     D.    Class members with material differences in the quality and value of
their claims must be separately represented. ............................................... 27

E.    The lack of separate representation resulted in an settlement that unfairly prejudiced class members with superior claims. ........................ 37

II.    The unbounded class definition violates Rule 23. ................................................ 40

Conclusion................................................................................................................. 44

Statement of Related Cases Under Circuit Rule 28-2.6 .................................................. 45

Certificate of Compliance with Federal Rule of Appellate Procedure 32(a)(7) and Circuit Rule 32-1 ................................................................................................... 46

Proof of Service ......................................................................................................... 47

# Table of Authorities

Cases

*Alaniz v. Saginaw Count.*,
No. 05-10323, 2009 U.S. Dist. LEXIS 43340 (E.D. Mich. May 21, 2009) ....... 42

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015) ............................................................... 19

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................*passim*

*Ansoumana v. Gristede's Operating Corp.*,
201 F.R.D. 81, 85 n.2 (S.D.N.Y. 2001) ................................................. 42

*In re Asbestos Litig.*,
134 F.3d 668 (5th Cir. 1999) ................................................................ 28

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014) ............................................................. 27

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ............................................................ 3, 19

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998) ............................................................... 30

*Burkhalter Travel Agency v. MacFarms Int'l, Inc.*,
141 F.R.D. 144 (N.D. Cal. 1991) ......................................................... 24

*Casey v. Albertson's Inc.*,
362 F.3d 1254 (9th Cir. 2004) ............................................................... 3

*Churchill Vill., LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ........................................... 19, 27, 33, 40

*In re Classmates.com Consol. Litig.*,
No. 09-cv-0045-RAJ,
2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012) ................................ 16

*Cruz v. Dollar Tree Stores, Inc.*,
No. 07-2050, 2009 U.S. Dist. LEXIS 62817 (N.D. Cal. July 2, 2009) ............... 42

*In re Deepwater Horizon*,
    732 F.3d 326 (5th Cir. 2013) ................................................................. 32

*Devlin v. Scardelletti*,
    536 U.S. 1 (2002) .................................................................................. 1

*Dewey v. Volkswagen AG*,
    681 F.3d 170 (3d Cir. 2012) ................................................................. 20

*In re Ditropan XL Antitrust Litig.*,
    M:06-CV-01761,
    2007 U.S. Dist. LEXIS 78423 (N.D. Cal. Oct. 11, 2007) .................................... 25

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) ................................................................. 6

*In re GMC Pick-Up Trucks*,
    55 F.3d 768 (3d Cir. 1995) ................................................................... 33

*Harman v. Apfel*,
    211 F.3d 1172 (9th Cir. 2000) ............................................................... 3

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ................................................................. 22

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ......................................................................*passim*

*In re Int'l Air Transp. Surcharge Antitrust Litig.*,
    No. M 06-01793, 2011 WL 6337625 (N.D. Cal. Dec. 19, 2011) ........................ 24

*Kansas v. Utilicorp United, Inc.*,
    497 U.S. 199 (1990) ............................................................................. 25

*In re Korean Air Lines Co.*,
    642 F.3d 685 (9th Cir. 2011) ................................................................. 23

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
    No. MDL 07-01891, 2008 U.S. Dist. LEXIS 111722 (C.D. Cal. June 25,
    2008) ................................................................................................ 21

*Lane v. Facebook*,
    696 F.3d 811 (9th Cir. 2012) ....................................................13, 33, 34

*In re Literary Works in Elec. Databases*,
    654 F.3d 242 (2d Cir. 2011) ................................................................ 20, 34, 35, 37

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ........................................................ 3, 33, 35

*Mirfasihi v. Fleet Mortg. Corp.*,
    356 F.3d 781 (7th Cir. 2004) ................................................................ 20

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ................................................................ 23

*In re Morales Travel Agency*,
    667 F.2d 1069 (1st Cir. 1981) ................................................................ 26

*Mueller v. CBS, Inc.*,
    200 F.R.D. 227 (W.D. Pa. 2001) ................................................................ 42

*Mullins v. Direct Digital, LLC*
    795 F.3d 654 (7th Cir. 2015) ................................................................ 40

*Newman v. Americredit Fin. Servs.*,
    No. 11-cv-3041, 2014 U.S. Dist. LEXIS 15728 (S.D. Cal. Feb. 3, 2014).......... 38

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ................................................................ passim

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ................................................................ 16, 39

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................ 28

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ................................................................ 33

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................ 28

*Rowe v. E.I. Dupont De Nemours & Co.*,
    262 F.R.D. 451 (D.N.J. 2009) ................................................................ 42

*Sanchez v. Frito-Lay, Inc.*,
No. 1:14-cv-00797,
2015 U.S. Dist. LEXIS 102771 (E.D. Cal. Aug. 5, 2015) .................................... 38

*Saur v. Snappy Apple Farms, Inc.*,
203 F.R.D. 281 (W.D. Mich. 2001) ........................................................ 42

*Smith v. Sprint Communications*,
387 F.3d 612 (7th Cir. 2004) ............................................................. 35

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ............................................................. 23

*In re Southeastern Milk Antitrust Litig.*,
No. 2:07-CV-208,
2010 U.S. Dist. LEXIS 94223 (E.D. Tenn. Sept. 7, 2010) .................................. 41

*In re SRAM Antitrust Litig.*,
No. 07-md-01819, 2010 WL 5477313 (N.D. Cal. Dec. 31, 2010) ...................... 22

*Sullivan v. DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011) ......................................................... 33, 36

*Telecomm Tech. Servs. v. Siemens Rolm Comms., Inc.*,
172 F.R.D. 532 (N.D. Ga. 1997) ......................................................... 28

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
785 F. Supp. 2d 835 (N.D. Cal. 2011) ................................................... 22

*Trollinger v. Tyson Foods, Inc.*,
No. 4:02-CV-23,
2007 U.S. Dist. LEXIS 88866 (E.D. Tenn. Dec. 3, 2007) .................................. 42

*Turicentro, S.A. v. Am. Airlines, Inc.*,
303 F.3d 293 (3d Cir. 2002) ............................................................. 21

*United States v. Kimsey*,
668 F.3d 691 (9th Cir. 2012) ............................................................. 34

*United States v. Vulcan Society*,
No. 07-CV-2067,
2011 U.S. Dist. LEXIS 60276 (E.D.N.Y. June 6, 2011) ............................... 36, 37

*Valdez v. Neil Jones Food Co.*,
    No. 1:13-cv-00519,
    2014 U.S. Dist. LEXIS 111766 (E.D. Cal. Aug. 11, 2014) ................................. 38

*Valley Drug Co. v. Geneva Pharms. Inc.*,
    350 F.3d 1181 (11th Cir. 2003) ............................................................................ 19

*Vickers v. GMC*,
    204 F.R.D. 476 (D. Kan. 2001) ............................................................................ 42

*In re Wal-Mart Stores, Inc.*,
    No. 06-02069, 2008 U.S. Dist. LEXIS 109446 (N.D. Cal. May 2, 2008).......... 42

*Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*,
    No. C 05-2320 SBA,
    2006 U.S. Dist. LEXIS 69193 (N.D. Cal. Sept. 13, 2006)................................. 41

*Wike v. Vertrue, Inc.*,
    2010 U.S. Dist. LEXIS 96700 (M.D. Tenn. Sept. 15, 2010).............................. 42

*Zeisel v. Diamond Foods*,
    No. C 10-01192, 2011 U.S. Dist. LEXIS 113550 (N.D. Cal. Oct. 3, 2011)....... 42

<u>Rules and Statutes</u>

15 U.S.C. § 1 ..................................................................................................... 1, 22

15 U.S.C. § 6a ................................................................................................*passim*

15 U.S.C. § 15 ........................................................................................................ 22

28 U.S.C. § 1291 ..................................................................................................... 1

28 U.S.C. § 1331 ..................................................................................................... 1

28 U.S.C. § 1337 ..................................................................................................... 1

49 U.S.C. § 41713 ................................................................................2, 11, 17, 22

Fed. R. App. Proc. 4(a)(1)(A) ............................................................................... 1

Fed. R. Civ. Proc. 23(a)(4) .............................................................................*passim*

Fed. R. Civ. Proc. 23(b) ............................................................. 31

Fed. R. Civ. Proc. 23(c)(2)(B) ..............................................2, 15, 43

Fed. R. Civ. Proc. 23(e)(1) ...........................................2, 15, 40, 41

Fed. R. Civ. Proc. 23(e)(2) ......................................................... 37

Fed. R. Civ. Proc. 23(e)(5) .................................................... 15, 43

Fed. R. Civ. Proc. 23(h) ....................................................... 12, 14

Fed. R. Civ. Proc. 54(b) ........................................................ 1, 14

Other Authorities

AMERICAN LAW INSTITUTE,
    PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.05 (2010) ......... 33, 38

Coffee Jr., John C.,
    *Class Wars: The Dilemma of the Mass Tort Class Action*,
    95 COLUM. L. REV. 1343 (1995) .............................................. 31

Jones, Ashby,
    *A Litigator Fights Class-Action Suits*,
    WALL ST. J. (Oct. 31, 2011) .................................................. 16

Leslie, Christopher R.,
    *The Significance of Silence: Collective Action Problems and Class Action
    Settlements*,
    59 FLA. L. REV. 71 (2007) .................................................... 33

Liptak, Adam,
    *When Lawyers Cut Their Clients Out of the Deal*,
    N.Y. TIMES, Aug. 13, 2013 .................................................... 16

MANUAL FOR COMPLEX LITIGATION (4th ed.) ...................................... 20, 28

Rosenbloom, Stephanie,
    *Booking Flights and Hotels: Online Agents or Direct?*,
    N.Y. TIMES, Feb. 25, 2015 .................................................... 38

Rubenstein, William B.,
    2 NEWBERG ON CLASS ACTIONS § 8.04.................................................... 41

Rubenstein, William B.,
    4 NEWBERG ON CLASS ACTIONS § 13.59 (5th ed. 2014) ...................................... 38

Schaef, Dennis,
    *GetGoing gives you a flight deal on a mystery vacation*,
    USA TODAY, Mar. 4, 2013.................................................................... 25

Stellin, Susan,
    *Taking Some Mystery Out of Blind Booking*,
    N.Y. TIMES, Mar. 28, 2013.................................................................. 25

Wasserman, Rhonda,
    *Future Claimants and the Quest for Global Peace,*
    64 EMORY L. J. 531 (2014) ................................................................. 43

Wright, Charles Alan, et al.,
    7B FEDERAL PRACTICE AND PROCEDURE § 1787 (2d ed. 1986)........................ 41

## Statement of Subject Matter and Appellate Jurisdiction

The district court had federal-question and antitrust jurisdiction pursuant to 28 U.S.C. § 1331 and § 1337 because the underlying suit alleged violations of the Sherman Act, 15 U.S.C. § 1.

This court has appellate jurisdiction under 28 U.S.C. § 1291. The district court ordered final approval of the settlements on May 26, 2015, and issued final judgment under Fed. R. Civ. P. 54(b) on June 15, 2015. ER1-ER37.[1] Objector Amy Yang, the appellant in this case, filed a notice of appeal on June 25, 2015. ER38. This notice is timely under Fed. R. App. P. 4(a)(1)(A). Appellant Yang, as a class member who objected to settlement approval below, has standing to appeal a final approval of a class action settlement without the need to intervene formally in the case. *Devlin v. Scardelletti*, 536 U.S. 1 (2002).

---

[1] "ER" refers to Yang's Excerpts of Record. "Dkt." refers to the district court docket in this case.

## Statement of the Issues

1.     The Supreme Court holds that allocation decisions between class members with concrete and speculative claims require separate representation to address these conflicting interests. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).

(a) Did the district court err as a matter of law when it held that Fed. R. Civ. P. 23(a)(4) adequate-representation requirements were satisfied despite intraclass conflicts within the single settlement class between (i) class members who suffered domestic injury and class members who suffered "foreign injury" and therefore faced the affirmative defense that they had no cause of action under the Foreign Trade Antitrust Improvements Act ("FTAIA"); and (ii) class members who purchased air transportation directly from defendants and class members who purchased air transportation indirectly through intermediaries and therefore faced the affirmative defenses that they had no federal cause of action under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) and no state cause of action, to the extent one was otherwise available, due to preemption by the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713? (Raised at ER199-ER203; ER44-ER45; ruled on at ER34-ER35.)

(b) Did the district court further err as a matter of law in approving settlements with unitary settlement classes where each class member will receive equal, *pro rata* recovery despite having claims of wildly differing litigation value because of the existence of these affirmative defenses unique to the uncertified subclass? (Raised at ER199-ER203; ER44-ER45; ruled on at ER34-ER35.)

2.      Rules 23(e)(1) and 23(c)(2)(B) require class members to be given notice of any pending settlement; Rule 23(e)(5) requires class members to be granted the right to object to the settlement; and Rule 23(c)(2)(B) requires class members to be granted the right to exclude themselves from the settlement. Does it violate these rules to certify a class that includes persons purchasing qualifying transpacific passenger air travel through the date that the final judgment is no longer subject to appeal, which will occur long after the objection and opt-out deadlines, thus binding these class members without notice or opportunity to object or opt out? (Raised at ER210-ER211; ruled on at ER37.)

### Standard of Review

A district court decision to approve a class action settlement is reviewed for abuse of discretion. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 940 (9th Cir. 2011). A failure to apply the correct standard of law is an abuse of discretion. *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004). Questions of law are reviewed *de novo. Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). With respect to class certification, "[w]hen the trial court's application of the facts to the law requires reference to the values that animate legal principles we review that application de novo." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

**Statutes and Rules**

**Federal Rule of Civil Procedure 23. Class Actions.**

**(a)      Prerequisites.**

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

…

(4) the representative parties will fairly and adequately protect the interests of the class.

**(c)      Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses.**

(2) Notice.

…

(B) *For (b)(3) Classes.* For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

…

(vi) the time and manner for requesting exclusion[.]

**(e)      Settlement, Voluntary Dismissal, or Compromise.**

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal or compromise:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

…

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdraw only with the court's approval.

## 15 U.S.C. § 6a – Conduct involving trade or commerce with foreign nations

Sections 1 to 7 of this title shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless—

    (1)    such conduct has a direct, substantial, and reasonably foreseeable effect—

        (A)    on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or

        (B)    on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and

    (2)    such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section.

## 28 U.S.C. § 2072 – Rules of procedure and evidence; power to prescribe

…

**(b)**    Such rules shall not abridge, enlarge or modify any substantive right….

## 49 U.S.C. § 41713 – Preemption of authority over prices, routes, and service

…

**(b) Preemption.—**

(1) Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart. …

## Statement of the Case

The underlying class action litigation alleged a conspiracy of numerous international air carrier defendants to fix prices in violation of the Sherman Act and sought recovery for passengers who had purchased transpacific air travel from the defendants and their alleged co-conspirators. Eight of the thirteen defendants have settled. This appeal relates to the district court's approval of five of these settlements, each of which creates a single class of purchasers permitted to recover the same *pro rata* share from the settlement fund, with an indefinite temporal limitation on class membership and no limitation on recovery for indirect purchasers or, with respect to one settlement, those who suffered foreign-based injury. Despite having sharply divergent interests, none of the subgroups within the settlement classes—purchasers of U.S.- and foreign-originating travel in the Japan Airlines International Company ("JAL") settlement class and direct and indirect purchasers in all five settlement classes—were provided separate representation to protect their conflicting interests as required by Rule 23(a)(4) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).

## A. A putative class of purchasers of transpacific passenger travel sue multiple defendants.

As stated by the district court, and according to the complaint:

> Defendants are various airlines that agreed to fix, raise, maintain, and/or stabilize air passenger travel, including associated surcharges, for international flights between the United States and Asia/Oceania. Plaintiffs are a class of individuals who purchased air transportation services from one or more of the Defendants that included at least one flight segment between the United States and Asia/Oceania.

> The [complaint] alleges that, beginning no later than January 1, 2000, Defendants and their co-conspirators agreed, and began, to impose air passenger air fare increases, including fuel surcharge increases, that were in substantial lockstep both in their timing and amount.

ER245 (citations and footnotes omitted). Plaintiffs alleged that as a result of this conduct, they may have paid more for international air travel.

On November 23, 2009, defendants filed a consolidated motion to dismiss arguing, *inter alia*, that "the FTAIA, 15 U.S.C. § 6A, bar[red] the Court from exercising subject matter jurisdiction over Plaintiffs' claims of foreign injury—that is, the overcharges associated with flights originating in Asia." ER248; Dkt. 290. The district court issued its ruling on this and twelve other motions to dismiss on May 9, 2011, at which time "JAL ha[d] apparently settled and [was] out of the case." ER245. As background, the district court explained:

> The FTAIA limits the courts' subject matter jurisdiction over Sherman Act claims involving foreign commerce. It provides in part:
>
> "Sections 1 to 7 of [the Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless: (1) such conduct has a direct, substantial, and reasonably foreseeable effect—(A) on trade or commerce which is not trade or commerce with foreign nations [i.e., domestic commerce], or on import trade or import commerce with foreign nations; or (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States [i.e., U.S.-based exporter]; and (2) such effect gives rise to a claim under the provisions

of sections 1 to 7 of this title, other than this section." 15
U.S.C. § 6a (emphasis added).

ER248-ER255 (emphasis in original).

The district court held that the FTAIA barred plaintiffs' foreign injury claims because such claims (a) do not involve import commerce and thus do not fall within the exception for "import commerce with foreign nations"; and (b) do not fall within the two-pronged exception for conduct that (i) has a "direct effect" on U.S. commerce, which effect (ii) was caused by the foreign injury. The district court thus dismissed with prejudice plaintiffs' claims arising out of foreign-originating flights against the defendants that remained in the case. ER255.

## B. Additional parties settle.

In mid-2014, a number of additional defendants settled, and JAL entered an amended settlement agreement. ER60-ER182. The defendant airlines each agreed to contribute an amount ranging from $555,000 to $10,000,000 to a settlement fund for *pro rata* distribution to eligible members of each settlement class. *E.g.,* ER85.

Each settlement created a single settlement class without subclasses. The settlements with defendants JAL, Air France, Singapore Airlines Limited, Vietnam Airlines Company Limited, and Malaysian Airline System Berhad define the settlement class to include persons who purchased qualifying air transportation from defendants or their co-conspirators:

> All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia [or] Oceania from Defendants [or their co-conspirators,] or any predecessor,

> subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date. Excluded from the class are purchasers of passenger air transportation between the United States and the Republic of South Korea purchased from Korean Air Lines, Ltd. and/or Asiana Airlines, Inc. Also excluded from the class are governmental entities, Defendants, [former defendants in the Actions,] any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees [and] immediate families.

ER65-ER66, ER91-ER92, ER116-ER117, ER141, ER166. American Airlines is included among the co-conspirators. Dkt. 948; Dkt. 948-4 at 149; Dkt. 968.

The settlements with defendants Thai Airways, Qantas Airways Limited, and Cathay Pacific Airways contain nearly identical settlement class definitions, except that the classes do not include persons and entities who purchased qualifying air transportation from "co-conspirators." Dkt. 999-5, 999-7, 999-8.

Of the eight settlements, seven released claims only "to the extent that such transportation [forming the basis of the claim] originated in the United States." ER89, ER115, ER138, ER164; Dkt. 999-5, 999-7, 999-8. Only the JAL settlement released claims without regard to the originating point of the underlying transportation. ER64. Reflecting the scope of the released claims, members of the JAL settlement class are eligible to receive a *pro rata* share of the settlement fund for their purchases of both U.S.-originating and foreign-originating travel. Members of the other seven settlement classes are eligible to receive a *pro rata* share of the settlement fund only for their purchases of U.S.-originating travel. ER231; Dkt. 948 at 9; Dkt. 948-4 at 151.

The settlement agreements define "Effective Date" as:

the earliest date on which all of the following events and conditions have occurred or have been met …:

(a) the Court has entered the Judgment, following notice to the Settlement Class and the Fairness Hearing, approving this Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Actions against [the defendant] with prejudice [as to all Settlement Class Members], and without costs except as specified herein; and

b) the time for appeal or to seek permission to appeal from the Judgment has expired or, if appealed, approval of this Settlement Agreement and the Judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

ER71, ER96-ER97, ER121, ER146, ER170; Dkt. 999-7, 999-8, 999-5 (materially identical).

The district court preliminarily approved the proposed settlements and certified the settlement classes submitted to it by the settling parties. ER235; ER239.

## C.  Yang objects to the settlements and class certification.

Amy Yang objected to the settlements and class certification. ER190. Because of her direct purchase of transpacific air travel from American Airlines during the class period, she is a class member of the JAL, Air France, Malaysian Airlines, Singapore Airlines, and Vietnam Airlines settlement classes. ER215-ER230; ER65-ER66, ER91-ER92, ER116-ER117, ER141, ER166. She is a U.S. resident who made a claim under

the settlements. ER216-ER217. She is represented *pro bono* by attorneys at the non-profit Center for Class Action Fairness ("CCAF"), and brought her objection in good faith to prevent approval of an unfair settlement and ratification of an improper class certification. ER217. (Yang initially objected to eight settlement agreements, but voluntarily withdrew her objections to three of the settlement agreements once she determined that her purchase from American Airlines did not make her a class member of the settlements with Cathay Pacific Airways, Qantas Airlines, and Thai Airways, and that she did not have standing to object to those settlements. Dkt. 1001.)

Yang objected, *inter alia*, that the settlements violated Rule 23(a)(4) because, by treating all class members the same despite sharp differences in the value of their claims, the settlements created intraclass conflicts that precluded a finding of adequate representation. More specifically, she objected that the JAL settlement unfairly diluted the claims of purchasers of U.S.-originating travel, who had stronger claims than purchasers of foreign-originating travel, who had no claim under the FTAIA, and that all of the settlements unfairly diluted the claims of direct purchasers, who had stronger claims than indirect purchasers, who had no right to recovery under federal law, *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), or under state law due to preemption of any state-law claim by the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713. ER199-ER203; ER44-ER45. Yang further objected that the classes do not establish a firm end-date for class membership and thereby deny many class members their Rule 23 rights to notice and to object or exclude themselves because they may not become class members until after the objection deadline. ER210-ER211. Yang also objected to the size and timing of plaintiffs' Rule 23(h) request. ER203-ER206; ER45-ER46.

Yang maintained her objection notwithstanding a several-hour deposition, taken while she was seven months pregnant, where class counsel asked her to provide legal opinions on the intricacies of class-action law and asked questions such as whether she knew how much money her attorney earned and if she could read English. Dkt. 1002-1 at ¶¶ 17-26.

In response to Yang's objection, plaintiffs, *inter alia*, contended that the JAL settlement did not create improper intraclass conflicts because the terms of the settlement were negotiated prior to the Court's dismissal of foreign-injury claims and, in any event, settlement value should be measured by the benefit provided to the class, not "on the vagaries of what might happen in the future of this litigation." Dkt. 999. Plaintiffs further responded that none of the five settlements created improper conflicts between direct and indirect purchasers because all class members shared an interest in establishing defendants' liability; contract principles permit parties to bind themselves as they see fit; and all class members here are direct purchasers. *Id.* The only evidence plaintiffs cited in support of their contention that all class members are direct purchasers was a blank form agreement for IATA Agents. ER183. Plaintiffs also disagreed that a definitive end date was required, arguing that once the criteria set forth in the settlement agreements were met, they would post the "exact effective date" on the settlement website, and thereby provide appropriate certainty. Dkt. 999.

For their part, the non-settling defendants responded by submitting a letter to the district court regarding application of the *Illinois Brick* doctrine. The letter stated in part: "This motion is not the proper vehicle for this Court to adjudicate whether certain class members are indirect purchases subject to an *Illinois Brick* defense, and the Court

has not been provided with the evidence that would be necessary to do so. If litigation proceeds in this Court once the pending appeal is resolved, the non-settling defendants expect to argue, in the appropriate posture and with the necessary evidentiary record, that the *Illinois Brick* doctrine bars the claims of some or all of the putative class members who purchased from intermediaries such as consolidators and travel agents." ER58-ER59.

**D.    The court overrules Yang's objection and approves the settlements.**

The district court held the fairness hearing on May 22, 2015. ER41. At the hearing, the district court recognized that Yang's arguments were brought in good faith and were "not frivolous objections." ER55. The court nevertheless approved the settlements and subsequently issued an order granting the plaintiffs' motions for final approval of the settlements on May 26, 2015. ER31. Overruling Yang's objections, the court "decline[d] the opportunity to wade into the *Illinois Brick* issue at this time" and, stated its belief that its role is not to differentiate within a settlement class based on the strength or weakness of the members' claims. Instead, relying on *Lane v. Facebook*, 696 F.3d 811, 824 (9th Cir. 2012), the Court held that, "while there might be differences in the values of individual class members' claims at trial (or following appeal), … the settlement as a whole is substantial, and fair." ER34-ER35. The court further overruled Yang's objection to the lack of a definitive end date in the settlement agreements on the grounds that there was a defined end date and the plaintiffs had stated their intent to post the precise effective date on the website when the definitional criteria were met. ER37.

The court did agree with some of Yang's objections to the Rule 23(h) request, reducing plaintiffs' Rule 23(h) request of over half the gross settlement fund by about $5.1 million to a total of $14.8 million in fees, expenses and "future expenses" out of a $39.5 million gross settlement fund. ER33-ER34. The district court awarded Yang $90,000 in fees for her role in the reduction. Dkt. 1062. After $112,500 in individual awards to representative plaintiffs and $2.4 million in notice costs, there is about $22.1 million net left to be distributed to claiming class members *pro rata*. ER33. These fee rulings are not at issue in this appeal, though class counsel is scheduled to be paid more than two thirds of what the class will ultimately receive.

The court issued final judgment under Rule 54(b) for the eight settling defendants. ER1-ER25; Dkt. 1014, 1017, 1020. This timely appeal to the approval of the five settlements to which Yang objected followed. ER38.

## Summary of Argument

The single settlement class created by each of the five settlement agreements and uniform plan of distribution on appeal present an unfair and untenable intraclass conflict. The conflicts are of two types but share a common feature: some class members have a claim with substantial litigation value, while other members in the same class have *no* cause of action under the law. Even to the extent their claims have any settlement value, the settlement fails to reflect that some members of the class face potentially dispositive affirmative defenses that others do not. *First*, in the JAL settlement, the damages claims by purchasers of U.S.-originating travel are much stronger than, and diluted by, the claims of purchasers of foreign-originating travel, who

14

have no claim under the FTAIA and the law of this case. *Second*, in all five of the settlements, the damages claims by direct purchasers are stronger than, and diluted by, the claims of indirect purchasers, who likewise have no cause of action. (Even to the extent that plaintiffs claim, contrary to existing law, that these uncertified subclasses might have causes of action with settlement value, it is unquestionably the case that the uncertified subclasses face affirmative defenses that fellow class members do not.) Because the single-class settlements fail to create subclasses with separate representation for these materially different claims, they violate the adequate representation requirement of Rule 23(a)(4). The unitary settlement classes cannot be certified as a matter of law, and it was reversible error for the district court to do so merely because it was more convenient for class counsel to ignore the rights of their putative clients by grouping unlike claims together in a single class.

In addition, the settlement agreements define the temporal boundary of the settlement classes to extend indefinitely—through the appellate process, until the date on which the final judgment is no longer subject to appeal—thereby including individuals who purchase qualifying air travel long after the notice program was implemented and the deadline for putative class members to object and opt-out have passed—indeed, after this brief is filed. The settlement agreements thereby deny these putative class members their rights to notice of the proposed settlement under Rules 23(e)(1) and 23(c)(2)(B), to object under Rule 23(e)(5), and to exclude themselves under Rule 23(c)(2)(B). For their part, individuals like Ms. Yang who entered the class before the preliminary approval date are harmed by the overinclusiveness of an

unbounded class because once again the settlement fund is diluted by individuals outside a properly certified class.

The class must be decertified because of the intraclass conflicts. At a minimum, the settlements must be rejected because their indefinite temporal boundaries deprived countless late-purchasing class members to their Rule 23 rights to notice and to object to and opt-out of the settlements.

## Preliminary Statement

Attorneys with the Center for Class Action Fairness, which became part of the non-profit Competitive Enterprise Institute on October 1, 2015, bring Ms. Yang's objection and appeal. (Ms. Yang is the wife of a Center attorney.) The Center's mission is to litigate on behalf of class members against unfair class-action procedures and settlements, and it has won millions of dollars for class members. *See, e.g.*, Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013, at A12 (calling Center attorney Frank "the leading critic of abusive class action settlements"); Ashby Jones, *A Litigator Fights Class-Action Suits*, WALL ST. J. (Oct. 31, 2011); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (Posner, J.) (praising the Center's work); *In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480, at *29 (W.D. Wash. Jun. 15, 2012) (same). This appeal is brought in good faith to protect class members in this and future class actions against unfair and abusive settlements.

## Argument

I.  **The class certifications of a single settlement class must be reversed as a matter of law because the settlements inappropriately treat all class members identically despite facing materially different affirmative defenses, creating intraclass conflicts that preclude a finding of adequate representation under Rule 23(a)(4) because of the lack of separate representation.**

In the settlements approved by the district court, class members with claims of vastly different litigation value all receive the same *pro rata* distribution of settlement funds. Purchasers of both U.S.- and foreign-originating travel are members of a single JAL settlement class entitled to uniform recovery; under the FTAIA, however, those with "foreign injury," *i.e.*, purchasers of foreign-originating travel, have no claim under the Sherman Act. As a result of the unitary class structure, class members who purchased U.S.-originating travel are expected to compromise the value of their claims so that the class members who purchased foreign-originating travel and whose claims have little or no value may recover equally from the settlement fund.

The settlement agreements with all five airline-defendant appellees have a similar intraclass conflict problem: they provide for a single, unitary class of direct and indirect purchasers that will recover the same *pro rata* distribution of the settlement funds.[2] But under *Illinois Brick* and the ADA, indirect purchasers are not entitled to recover for their alleged antitrust injury. Class members with a claim arising from a direct purchase of qualifying air travel are unfairly expected to compromise the value of their claims so

---

[2] Indeed, all eight settlements approved by the district court suffer from this infirmity, but Yang's appeal reaches only the five settlements she has standing to challenge as an objecting class member.

that indirect purchasers (*e.g.*, individuals who purchased through travel agents or consolidators) with claims of little to no value nevertheless may recover equally from the settlement fund. Had the two divergent groups of claims had separate representation under appropriately defined subclasses, adequate representatives of the subclass with the superior claims would not have tolerated such arbitrary treatment. It is only because class counsel took shortcuts for their own convenience to prevent the need to share their fees with separate representatives that class members such as Yang are expected to dilute their claims.

This is wrong. These two conflicts are the very definition of intraclass conflict, and they preclude Rule 23(a)(4) certification of a single class in each settlement agreement. The unitary class structure forces class members with superior claims to unfairly compromise and dilute their claims for damages so that class members who have no claim, or speculative claims that at a minimum face additional hurdles from unique affirmative defenses, can participate in a single settlement class. The approval of settlements with such fundamental intraclass conflicts violated the adequate representation requirement of Rule 23(a)(4). These are qualitatively different claims competing against one another for the rights to a limited settlement fund, and they cannot be conglomerated into a single settlement class without separate representation of class representative and of counsel. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997) (where there are significant differences among subgroups within a class "the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups"); *Ortiz*, 527 U.S. at 856 ("[I]t is obvious after *Amchem* that a class

divided … requires division into homogeneous subclasses…, with separate representation to eliminate conflicting interests of counsel.").

## A. A district court must protect absent class members' interests.

The law in this Circuit requires courts to consider the eight-factor *Churchill Village* test to evaluate the fairness of a settlement. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "[W]here, as here, a settlement agreement is negotiated prior to formal class certification, consideration of these eight *Churchill* factors alone is not enough to survive appellate review." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2001). Such settlements "require a higher standard of fairness," and, thus, when assessing "'a request for settlement-only class certification,' the court must look to the factors 'designed to protect absentees.'" *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003) (quoting *Amchem*, 521 U.S. at 620). *See also Bluetooth*, 654 F.3d at 946-48 (pre-certification settlement approval requires a "higher level of scrutiny" because of the danger of conflicts of interest endemic to class actions); *Allen v. Bedolla*, 787 F.3d 1218, 1223-24 (9th Cir. 2015) (similar).

The protection of absentee class members is particularly important where they have "separate, antagonistic interests." *See Valley Drug Co. v. Geneva Pharms. Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003); *see also Amchem*, 521 U.S. at 620 (certification requirements "designed to protect absentees by blocking unwarranted or overbroad class definitions" demand "undiluted, even heightened, attention in the settlement context"). The Supreme Court has instructed that "intraclass equity" is a "requirement." *Ortiz*, 527 U.S. at 863.

The Rule 23(a)(4) adequacy test examines whether class members have any interests antagonistic to one another. *In re Literary Works in Elec. Databases*, 654 F.3d 242, 249 (2d Cir. 2011). If "fundamental" differences in interests exist between different groups within the class, Rule 23(a)(4) requires the settlement to create subclasses, with separate representatives and class counsel for each subclass. *Id.* at 250 (quoting *Ortiz*, 527 U.S. at 856); MANUAL FOR COMPLEX LITIGATION (4th ed.) § 21.23. A fundamental conflict exists where class members have claims whose qualitative value is materially different. Because "[a] conflict concerning the allocation of remedies amongst class members with competing interests can be fundamental," the court's evaluation therefore must weigh not only the total constructive common fund against the value of the class claims in toto, but the compensation for each of the individual types of claims. *Dewey v. Volkswagen AG*, 681 F.3d 170, 184 (3d Cir. 2012) (citing *Amchem* and *Ortiz*); *see also Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004). In that evaluation, the value of claims of differently-situated class members must be weighed against one another to determine whether the certification and intraclass allocation are fair and reasonable. The district court explicitly refused to do this, ER35, and this by itself was reversible error.

**B.    JAL class members who purchased U.S.-originating air travel have qualitatively superior claims to class members who purchased foreign-originating air travel.**

FTAIA, the Foreign Trade Antitrust Improvements Act, limits the jurisdiction of courts over Sherman Act claims involving foreign commerce. In a 2011 order, the district court dismissed from the case with prejudice plaintiffs' claims against

defendants that arise out of "foreign injury," i.e., "the overcharges associated with flights originating in Asia," because such claims were barred by FTAIA. ER248; ER255. Although JAL had settled at the time the court issued its ruling, the value of claims arising from foreign-originating travel are still worth materially less than those arising from U.S.-originating travel simply as a practical matter. The foreign-originating-travel claims were subject to an affirmative defense that the U.S.-originating-travel claims were not. That the affirmative defense was ultimately successful in this case should not have been unexpected, as courts have long applied FTAIA to bar antitrust claims involving foreign-originating travel and related services. *E.g.*, *Turicentro, S.A. v. Am. Airlines, Inc.*, 303 F.3d 293, 303 (3d Cir. 2002); *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, No. MDL 07-01891, 2008 U.S. Dist. LEXIS 111722, at *18 (C.D. Cal. June 25, 2008).[3]

---

[3] And even within the uncertified subclass of JAL class members who purchased foreign-originating travel, there is a further conflict between U.S. and foreign residents because U.S. residents have a stronger claim for damages under the "domestic effects" exception in the FTAIA. Even to the extent foreign-originating claims retain some minimal litigation value because of the small chance that plaintiffs could have won the issue on a future appeal, the position of U.S. residents is materially stronger under existing caselaw and, thus, their claims would have greater settlement value than those of foreign residents if separately represented. While the scope of the "domestic effects" exception remains subject to debate, there exist cases where U.S. residents have succeeded on both prongs of the inquiry, while foreign residents' claims of foreign injury generally have been outright rejected. *See* ER251 (holding that U.S. residents had met the first prong and rejecting damage to foreign travelers as "unpersuasive" and "entirely indirect"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 785 F. Supp. 2d 835, 842-844 (N.D. Cal. 2011) (finding that allegations fell within "domestic effects" exception where global prices were negotiated, in part, in the U.S. and noting that the company "is not a foreign company alleging injury based wholly on foreign transactions and conduct"); *In re SRAM Antitrust Litig.*, No. 07-md-01819, 2010 WL 5477313, at *6-*7

Despite the dismissal of foreign-originating-travel claims from the case, and despite the fact that purchasers of foreign-originating-travel claims plainly faced a potentially meritorious affirmative defense that would obliterate their claims and their claims only, the JAL settlement treats purchasers of both U.S.- and foreign-originating travel identically. Both are in a single settlement class, and both will receive the same *pro rata* distribution. ER34-ER35; ER232; Dkt. 948. The single JAL settlement class thus includes subgroups of class members with qualitatively different claims competing for the same settlement funds. Combining them into the same class creates an untenable intraclass conflict of interest. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010) (representation was inadequate when "one group within a larger class possesses a claim that is neither typical of the rest of the class nor shared by the class representative.").

One can see that the two uncertified subclasses have wildly different litigation values, because *every* defendant who negotiated a settlement after the 2011 order excluded foreign purchasers from recovering from the settlement fund, and did not even seek a release from those potential plaintiffs. The non-JAL settling defendants would not have taken that risk if they felt there was any chance of plaintiffs successfully challenging the 2011 order on appeal, or even threatening to do so.

---

(N.D. Cal. Dec. 31, 2010) (finding that U.S. purchasers of a product had met the second prong).

**C. Class members who purchased air travel directly from the airlines have qualitatively superior claims to class members who purchased air travel indirectly and arguably would have no cause of action.**

Under the Sherman Act, victims of price-fixing conspiracies are entitled to treble damages. 15 U.S.C. §§ 1, 15. Federal law limits those who can recover such damages to direct purchasers from offending parties; indirect purchasers who pay higher prices because their reseller passes on overcharges from the price-fixing conspiracy have no cause of action. *Illinois Brick Co.*, 431 U.S. 720; *Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013). Although several states have passed "repealer" legislation to create an independent state-law cause of action for indirect purchasers, the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713, preempts any such cause of action against the defendants here. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) (ADA preempts state consumer protection claims against air carriers); *In re Korean Air Lines Co.*, 642 F.3d 685 (9th Cir. 2011) (ADA preempts state antitrust claims against air carriers).

The settlements with the five airline defendant-appellees nevertheless create settlement classes that include both those who purchased air travel directly from an airline and those who made their purchase from an intermediate vendor, such as a travel agent or consolidator. *See Korean Air Lines*, 642 F.3d at 689 (assuming without discussion that those who purchase through travel agents or consolidators "are indirect purchasers"). Under the unitary classes in each settlement, the direct-purchaser class members with legitimate causes of action are expected to compromise their claims so that indirect-purchaser class members with no cause of action may recover equally from the settlement fund.

In an effort to address this intraclass conflict, plaintiffs claimed that all class members here are direct purchasers because travel agents and other consolidators are "agents" of the airlines and, thus, any purchase from them was effectively a direct purchase from the airline fitting within a narrow exception to *Illinois Brick*. There seems little factual basis for this bald assertion. For example, a consumer using Priceline, an Internet vendor that matches consumers' bids for air travel with its own ability to purchase tickets from suppliers without guaranteeing a ticket from a particular airline, does not fit within the "travel agent as agent of airline" paradigm that plaintiffs claim nullifies *Illinois Brick*.

The district-court cases plaintiffs cited below (Dkt. 999 at 11) are nowhere near as dispositive as they claim. *In re Int'l Air Transp. Surcharge Antitrust Litig.*, No. M 06-01793, 2011 WL 6337625, at *3 (N.D. Cal. Dec. 19, 2011), for example, was an interpretation of class membership under a settlement agreement, and the district court there explicitly stated that its role was to "determine whether Carnival fits within the definition of a class member as defined by the settlement agreement and irrespective of antitrust principles." *Illinois Brick* was thus irrelevant to that determination. While *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 149-50 (N.D. Cal. 1991) questionably concluded that a travel agent was not a direct purchaser where it bought macadamia nuts and sold them to a third party at cost, it did so only after a detailed individualized factual analysis that would be inappropriate in a class certification motion—and certainly has no precedential value for a Priceline or other nontraditional

Internet intermediary.[4] Too, the Supreme Court has emphasized that the *Illinois Brick* exception for a direct purchaser "controlled" by the seller is an exception that should be read narrowly and not expanded. *In re Ditropan XL Antitrust Litig.*, M:06-CV-01761, 2007 U.S. Dist. LEXIS 78423, *10-*11 (N.D. Cal. Oct. 11, 2007) (citing *Kansas v. Utilicorp United, Inc.*, 497 U.S. 199, 216-17 (1990)). Plaintiffs are simply wrong, but even if they could hope to be ultimately vindicated on this point, what is relevant is not the ultimate success of their long-shot argument against application of *Illinois Brick,* but whether one set of class members' claims are materially riskier because of an affirmative defense that does not apply to another set of class members. It is certain that an airline asserting an indirect-purchaser defense against an antitrust claim brought by a passenger that used Priceline to purchase her ticket would not be doing so frivolously.

Despite citing these highly fact-specific analyses that demonstrate that there is a more-than-colorable affirmative defense, plaintiffs asserted that all putative class members were direct purchasers without establishing a principal-agent relationship between the defendants and vendors from whom putative class members purchased qualifying air travel. The only evidence plaintiffs submitted was an incomplete, unauthenticated form agreement. ER183. Plaintiffs presented no evidence that *any*

---

[4] Other innovative Internet business models of selling air travel to class members within the class period also fail to fit within the *Illinois Brick* exception plaintiffs assert. For example, from 2013 to 2014, GetGoing provided substantial discounts of up to 40% off of published airfares to consumers who were willing to prove that they were leisure travelers by committing to purchase nonrefundable tickets to a randomly selected flight to one of two itineraries to different destinations. Susan Stellin, *Taking Some Mystery Out of Blind Booking*, N.Y. TIMES, Mar. 28, 2013; Dennis Schaef, *GetGoing gives you a flight deal on a mystery vacation*, USA TODAY, Mar. 4, 2013.

travel agents or consolidators actually entered into this specific form agreement, much less that they *all* did. *Cf. In re Morales Travel Agency,* 667 F.2d 1069, 1072-73 (1st Cir. 1981) (noting that different travel agents had different contracts with different airlines; holding that travel agent was in debtor-creditor relationship with airline, notwithstanding airline's assertion that agency contract created trust). Nor did plaintiffs establish that the form created a relationship sufficient to make purchasers from intermediate vendors "direct purchasers" permitted to recover damages under *Illinois Brick*—especially in the case of a "name your own price" user of Priceline. Underscoring the inconclusive nature of plaintiffs' assertion, non-settling defendants submitted a letter to the district court stating that the motion for final approval of the settlements "is not the proper vehicle for this Court to adjudicate whether certain class members are indirect purchasers subject to an *Illinois Brick* defense, and the Court has not been provided with the evidence that would be necessary to do so." ER58.

Defendants are correct. Neither the district court nor this Court need resolve the dispute over who is a direct or an indirect purchaser to conclude that the settlements create an untenable intraclass conflict. Yang's Rule 23(a)(4) argument does not depend on whether plaintiffs might ultimately prove an exception to *Illinois Brick*, merely on whether defendants have an argument substantial enough to create a material risk to plaintiffs that a subset of the settlement class will face affirmative defenses that materially reduce the settlement value of their claims. Simply as a practical matter, those who purchased air travel directly from the airlines have a stronger claim for damages because those who purchased their travel from an intermediate vendor must overcome statutory- and preemption-based affirmative defenses that direct purchasers need not.

Moreover, plaintiffs' own evidence and cited cases show that the purchasers from intermediate vendors would face an additional hurdle that those who unquestionably purchased directly from the airlines would not: the risk that the individualized fact-based inquiry over whether a purchase was a direct purchase would preclude class certification. *E.g., Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069-70 (9th Cir. 2014) (individual fact variation undermines (b)(3) predominance).

Once again, the single settlement class groups together class members with claims of materially different settlement value, because some class members confront potentially (indeed likely) meritorious affirmative defenses that others like Ms. Yang do not. As the next subsection shows, this is fatal to the class certification and the settlement fairness here.

## D.    Class members with material differences in the quality and value of their claims must be separately represented.

Under Ninth Circuit law, a crucial factor in determining the fairness of a settlement is the "strength of the plaintiffs' case." *Churchill Vill.*, 361 F.3d at 576. But that evaluation can hardly be made for a settlement class when class members have claims whose qualitative value is materially different based on (1) the originating point of their travel, and (2) whether they purchased air travel directly from an airline or indirectly through a travel agent, consolidator, or other intermediate vendor. Here, putative class members have vastly different claim values because some class members have virtually zero chance of success on their claims, while others have relatively strong claims for damages. The class members with legitimate claims are forced to compromise their claims so that class members with speculative claims can participate in a single

settlement class for each airline. This is convenient and lucrative for class counsel, who do not face diluting their fee with separate attorneys for separate representatives of the subclasses, but Rule 23 does not permit such shortcuts at the expense of the class: the procedural tail cannot wag the substantive dog.

"An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy" under Rule 23(a)(4). *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (adequacy of representation is essential to protect due process rights of absent class members). Adequate representation requires "structural assurance of fair and adequate representation for the diverse groups and individuals affected." *Amchem*, 521 U.S. at 627. "A representative must 'possess the same interest and suffer the same injury as the class members' and must be aligned in interest such that no conflicts exist between the representative and any 'discrete subclasses' within the broader class he purports to represent." *In re Asbestos Litig.*, 134 F.3d 668, 677 (5th Cir. 1999) (Smith, J. dissenting) (quoting *Amchem*), *rev'd sub nom. Ortiz*, 527 U.S. 815. *Accord* MANUAL FOR COMPLEX LITIGATION (4th ed.) § 21.612. If significant differences in interests exist between different groups within the class, the certification must create subclasses, with separate representatives and class counsel for each subclass. *Id.* § 21.23. "Antagonistic interests are not only those which directly oppose one another, but also are those which may be hostile to one another or unharmonious such that one party's interests may be sacrificed for another's." *Telecomm Tech. Servs. v. Siemens Rolm Comms., Inc.*, 172 F.R.D. 532, 544 (N.D. Ga. 1997).

The Supreme Court addressed a settlement with such conflicting interests in an asbestos litigation:

> The settlement decides that the claims of the immediately injured deserve no provisions more favorable than the more speculative claims of those projected to have future injuries, and that liability subject to indemnification is no different from liability with no indemnification. The very decision to treat them all the same is itself an allocation decision with results almost certainly different from the results that those with immediate injuries or claims of indemnified liability would have chosen.
>
> Nor does it answer the settlement's failures to provide structural protections in the service of equity to argue that the certified class members' common interest in securing contested insurance funds for the payment of claims was so weighty as to diminish the deficiencies beneath recognition here. This argument is simply a variation of the position put forward by the proponents of the settlement in *Amchem*, who tried to discount the comparable failure in that case to provide separate representatives for subclasses with conflicting interests, see Brief for Petitioners in *Amchem Products, Inc. v. Windsor*, O. T. 1996, No. 96-270, p. 48 (arguing that "achieving a global settlement" was "an overriding concern that all plaintiffs [held] in common"); see also id., at 42 (arguing that the requirement of Rule 23(b)(3) that there be predominance of common questions of law or fact had been met by shared interest in "the fairness of the settlement"). The current position is just as unavailing as its predecessor in *Amchem*. There we gave the argument no weight, see 521 U. S., at 625-628, observing that "[t]he benefits asbestos-exposed persons might gain from the establishment of a grand-scale compensation scheme is a matter fit for legislative consideration," but the

> determination whether "proposed classes are sufficiently cohesive to warrant adjudication" must focus on "questions that preexist any settlement," *id.* at 622-623. Here, just as in the earlier case, the proponents of the settlement are trying to rewrite Rule 23; each ignores the fact that Rule 23 requires protections under subdivisions (a) and (b) against inequity and potential inequity at the precertification stage, quite independently of the required determination at postcertification fairness review under subdivision (e) that any settlement is fair in an overriding sense.

*Ortiz,* 527 U.S. at 858-59 (footnote and some citations omitted).

Under *Ortiz*'s framework, the legal strength of claims matters to adequacy. *Id.* at 857 (holding that it violates intraclass equity requirement to intermingle claims of divergent legal value). The *Ortiz* class included plaintiffs exposed to asbestos both before and after the defendant's insurance policy had expired. *Id.* at 857-58. Because the pre-expiration claimants had access to insurance proceeds, their claims were inherently more valuable, just as the damages claims of those who purchased U.S.-originating travel and made purchases directly from the airlines are inherently more valuable because they are well-established under antitrust law. And just as the pre-insurance-expiration claimants in *Ortiz* would not have chosen an allocation that treated all claimants the same, direct purchasers and purchasers of U.S.-originating travel would not have chosen an allocation that valued their claims the same as far more speculative claims.

Because of these conflicts, there had to be subclassing, with each subclass having "separate representation to eliminate conflicting interests of counsel" before there could be class certification. *Ortiz,* 527 at 856. That is, "reclassification with separate

counsel," not merely separate named representatives. *Id.* at 857. If this is true even at the expense of the convenience of resolution of the "elephantine mass of asbestos cases," *id.* at 821, it is surely true in this much smaller-scale litigation just because class counsel prefers not to have to split its fee with unconflicted counsel.

As Professor Coffee noted decades ago,

> [P]robably the most disquieting phenomenon about recent mass tort settlements has been the acceptance of a single attorney acting as the representative of multiple subclasses…. Not only have the interests of these subclasses clearly conflicted, but the class counsel has explicitly traded off the interests of subclasses against each other, obtaining substantial compensation for one subclass in return for a waiver of cash compensation by another. In such multiparty negotiations between the defendants and different subclasses of plaintiffs, even the well-meaning plaintiffs' attorney shifts inevitably from the role of an advocate and adviser for clients to the role of a philosopher king, dispensing largess among his client subjects…. These intra-class trade-offs are, however, an endemic problem that transcends the asbestos context. Any settlement that awards compensation by disease or injury classification creates potential allocation issues: should the compensation for one subclass be raised and correspondingly that for another lowered?

John C. Coffee Jr., *Class Wars: The Dilemma of the Mass Tort Class Action*, 95 COLUM. L. REV. 1343, 1443 (1995).

It was inherently unfair for class counsel to agree to a settlement with procrustean limits on the recovery by class members with strong claims to justify raising the recovery by class members with no claim to the same *pro rata* amount. "Rule 23 is

designed to efficiently handle claims recognized by law, not to create new claims." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 343 (3d Cir. 2011) (Jordan, J. dissenting); *see also Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998) ("It is axiomatic that the procedural device of Rule 23 cannot be allowed to expand the substance of the claims of class members."). "By including claimants in the class definition that lack colorable claims," and failing to provide separate representation to those claimants and those who have colorable claims, "a court disregards" the Supreme Court's "caution[] that 'Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instruct that rules of procedure 'shall not abridge, enlarge or modify any substantive right.''" *In re Deepwater Horizon*, 732 F.3d 326, 341 (5th Cir. 2013) (quoting *Amchem*, 521 U.S. at 613 (quoting 28 U.S.C. § 2072(b))).

Plaintiffs argued to the district court that unitary settlement classes were appropriate under the holding of *Sullivan*, where, in a divided *en banc* opinion, the Third Circuit affirmed approval of a uniform settlement with a fifty-state indirect-purchaser class in which some members had a cause of action while others did not. 667 F.3d 273. But *Sullivan* is inapplicable here. The majority opinion focused on Rule 23(a) commonality and Rule 23(b) predominance, and did not address the issue of Rule 23(a)(4) intraclass conflicts and adequacy because, unlike here, the appellants did not raise that objection. *See also Sullivan*, 667 F.3d 273, 342 n.4 (3d Cir. 2011) (Jordan, J.

dissenting) (noting that parties failed to "press the [Rule 23(a)(4)] issue in their briefs").[5] The district court nevertheless relied upon and quoted *Sullivan* in its order granting final approval to the settlements to support its stated belief that its role is not to "'differentiat[e] within a class based on the strength or weakness of the theories of recovery.'" ER35. But that's exactly wrong, because *Ortiz* and *Churchill Village* require exactly that: analysis of *the strength of the plaintiff's case*.[6]

The district court also relied on this Court's divided-panel decision in *Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012), to support its approval of settlements. ER35.

---

[5] *Sullivan* is wrong even on the narrower Rule 23(b)(3) analysis, contradicting Supreme Court and Ninth Circuit precedent. *Cf. Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-94 (9th Cir. 2012).

[6] Surely the relative strength of the cases of differently situated class members is more relevant to settlement fairness than "the number of objections"; the district court erred to the extent it believed that a low number of objections was evidence that the settlement should be approved. ER34. This *Churchill Village* factor was intended to require a court to not ignore objections, not to nose-count and devalue objections when they are made. Assuming a low number of objections is evidence of fairness is "naïve," given the "transactions costs" of objecting. *Redman v. RadioShack Corp.*, 768 F.3d 622, 628 (7th Cir. 2014) (Posner, J.). Just as it is uneconomic to bring class-action litigation as individual litigation, it is even more uneconomic to object to an unfair class-action settlement. Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007); *see also In re GMC Pick-Up Trucks*, 55 F.3d 768, 812-13 (3d Cir. 1995). There will never be a large number of objectors in a class-action settlement with millions of negative-value claims, so the absence of thousands of objectors in a world where only a handful of attorneys bring objections *pro bono* says nothing about the fairness of a settlement. If this Court reads the *Churchill* test differently, it should reconcile the test with the criticism of such readings by the American Law Institute. PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.05 *comment a* at 206 (2010) ("*ALI Principles*").

Like *Sullivan*, however, *Lane* is inapplicable here. *Lane* addressed an objectors' argument that the $9.5 million recovery provided in the settlement was too low *as a whole* because the district court failed to consider the value of certain class members' Video Privacy Protection Act ("VPPA") claims that were eligible for statutory damages in the amount of $2500 per violation. *Id.* at 822-23. The objectors did "not challenge the district court's class certification or its decision to include individuals with VPPA claims in the settlement class," and the court "express[ed] no opinion" on whether it was unfair for there to be "significant variation in claimed damages among class members" under the Rule 23(b)(3) predominance analysis or the Rule 23(a)(4) adequacy analysis. *See id.* at 824 n.5.

The district court's reliance of *Sullivan* and *Lane*—cases which did not analyze Rule 23(a)(4)'s adequacy requirements—while failing to even cite *Amchem* or *Ortiz* underscores its legal error in certifying the settlement classes. "[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions." *United States v. Kimsey*, 668 F.3d 691, 699 (9th Cir. 2012) (internal quotations omitted).

Courts undertaking a Rule 23(a)(4) analysis have followed *Amchem* and *Ortiz* to hold that classes that include claims of sharply different litigation value fail to meet the Rule's adequate representation requirement. In *In re Literary Works in Electronic Databases Copyright Litigation*, class counsel attempted to negotiate compensation from Google for three separate "categories" of class members in a single settlement. 654 F.3d 242, 246 (2d Cir. 2011). Each category received a different damages formula. As in this case, each class representative "served generally as a representative for the whole, not for a separate constituency." *Id.* at 251 (quoting *Amchem*, 521 U.S. at 627). The Second Circuit

did not dispute that each category had differently valued claims; nor did it make any finding that the compensation negotiated for any category was unfair or inadequate. Nevertheless, the settlement was stricken on Rule 23(a)(4) grounds because the class representatives "cannot have had an interest in maximizing compensation for *every* category." *Id.* at 252 (emphasis in original).

Similarly, in *Smith v. Sprint Communications*, the Seventh Circuit vacated certification of a nationwide settlement class where differences in state law meant that class members had claims of materially different value. 387 F.3d 612 (7th Cir. 2004). Even though "the settlement agreement provided that adjustments [would] be made to the amount of recovery available to landowners in a given state, based on an analysis of that state's law by independent property-law experts," that still did "not provide the 'structural assurance of fair and adequate representation' prior to the settlement" required by Rule 23. *Id.* at 615 (quoting *Amchem*, 521 U.S. at 627)). *Cf. Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 & n.4 (9th Cir. 2012) (vacating class certification where variances in state law precluded a finding of predominance and noting that the "opinion does not foreclose in an appropriate case the use of smaller statewide classes of those purchasing in a particular state, or the use of subclasses within a larger class").

Here, unlike in *Literary Works* and *Sprint Communications*, the parties deliberately chose "simple, straightforward" leveling of all claims regardless of the strength of the claim, and do not even have the pretense of an argument that unlike claims were appropriately weighted to reflect the relative strengths of the claims. The settlements dilute the recovery from the fixed settlement pot for class members with legitimate claims by including class members with claims not entitled to recover anything under

existing law and claims that face significant, and possibly meritorious, affirmative defenses. "The problem here is not that some absent class members who deserve compensation are left out by the settlement. The problem is that some class members who deserve nothing are included in the settlement and hence are diluting the recovery of those who are entitled to make claims. That harm is real, and the cause of it, the overbreadth of the class, is akin to the problem in *Amchem*." *Sullivan*, 667 F.3d at 353 n.22 (Jordan, J., dissenting).

In the class action settlement context, a court "cannot rely on the adversarial process to protect … the class." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013). The "economic reality" is that a defendant merely cares about its total liability, and not the fair allocation of damages and relief. *See id.* at 717. While the parties are entitled to settle the case for the relief they judge appropriate, how that fixed settlement amount or other relief is allocated is constrained by Rule 23(a)(4)'s adequate representation requirements.

For example, the need for adequate representation was laid bare in *United States v. Vulcan Society*, where the court held that it was necessary to create subclasses prior to class certification because the claims implicated a conflict of interest between putative class members over the requested relief. No. 07-CV-2067, 2011 U.S. Dist. LEXIS 60276 (E.D.N.Y. June 6, 2011). In that employment case, "non-hire" plaintiffs sought retroactive seniority and priority hiring relief, which, if awarded, would dilute the value of the seniority accumulated by the delayed-hire plaintiffs and place the two groups in direct competition for employment benefits available to those with greater seniority. Given the competition over the fixed pot of relief, the court held, a "delayed-hire victim

cannot adequately protect the interests of non-hire victims, nor can a non-hire victim protect the interests of delayed-hire victims." *Id.* at *23. Subclasses were required "to enable the representatives and counsel for [the two subclasses] to present their arguments to the court in a context in which there are no structural conflicts preventing them from fully and fairly representing the interests of the subclasses." *Id.* at *24. A claimant's ability to object was "no substitute" for the adequate representation requirement of Rule 23. *Id.*

A settlement with a fixed sum of money to be distributed to class members is no different. Here, too, class members are competing for zero-sum relief. Any portion of the fund that goes to one subgroup necessarily reduces the fund available for another class member subgroup.

Even if it were the case that the class representatives included purchasers of both foreign- and U.S.-originating travel and both direct and indirect purchasers (the record is unclear), that does not assure adequacy without distinct representation. "Only the creation of subclasses, ***and the advocacy of an attorney representing each subclass***, can ensure that the interests of that particular subgroup are in fact adequately represented." *Literary Works*, 654 F.3d at 245 (emphasis added).

**E.    The lack of separate representation resulted in an settlement that unfairly prejudiced class members with superior claims.**

Beyond the (a)(4) certification problem, the undifferentiated distribution of settlement funds to individuals with significantly weaker claims violates Rule 23(e)(2)'s requirement of fairness. When evaluating a settlement,

> The court should look at whether class members are treated equitably among themselves and whether the settlement accounts for material differences among class members. For instance, an agreement that gives the same monetary remedy to all members of the class, despite significant differences in the nature of their claims or injuries, may not be fair and reasonable.

*ALI Principles* § 3.05, *comment b*. The overarching principle is "to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated." 4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13:59, at 500 (5th ed. 2014); *Newman v. Americredit Fin. Servs.*, No. 11-cv-3041, 2014 U.S. Dist. LEXIS 15728 (S.D. Cal. Feb. 3, 2014) (rejecting equal treatment where half the class had potentially no claim); *Valdez v. Neil Jones Food Co.*, No. 1:13-cv-00519, 2014 U.S. Dist. LEXIS 111766 (E.D. Cal. Aug. 11, 2014) (rejecting equal treatment where class members made differing wages); *Sanchez v. Frito-Lay, Inc.*, No. 1:14-cv-00797, 2015 U.S. Dist. LEXIS 102771, at *28 (E.D. Cal. Aug. 5, 2015) (rejecting identical treatment where some employees worked less hours for differing pay).

The prejudice and dilution here is not immaterial. In the fifteen-year class period, 2013 is the first year that more Americans booked travel directly with airlines than indirectly with online travel agents, "officially ending" online travel agents' "decade-long dominance in leisure air bookings." Stephanie Rosenbloom, *Booking Flights and Hotels: Online Agents or Direct?*, N.Y. TIMES, Feb. 25, 2015. The claim forms submitted in this settlement do not distinguish between direct and indirect purchasers, but if settlement claimants are a representative sample of leisure air travelers, then a majority

of claimants at least arguably will be indirect purchasers, meaning that direct purchaser claimants such as Ms. Yang would have their settlement payments doubled if direct purchasers had been adequately represented and inappropriately dilutive claimants without a cause of action had been excluded from the settlement fund.[7] The parties have not disclosed how many claims were made on the settlement fund and what the size of individual *pro rata* claims will be; we suspect the claims rate is small given the lack of individualized notice. ER207-ER209; *cf. Pearson*, 772 F.3d at 782 (noting all-too-typical low claims rates in consumer settlements and citing literature). If so, the prejudice to claiming class members such as Ms. Yang is especially large, but to the uncertified subclass of direct purchasers as a whole, the dilution is certainly in the millions of dollars, and likely over half of the $22.1 million net settlement fund.

~     ~     ~

Direct-purchasing class members situated like Ms. Yang have had their settlement rights impermissibly and unfairly diluted by millions of dollars because of class counsel's conflict of interest and class counsel's selfish preference to have a single

---

[7] And doubling is almost certainly an underestimate of the effect of removing the unfair dilution. The statistics cited by the *New York Times* include the over-20% market share of Southwest Airlines, which only makes direct sales, and which also does not offer transpacific flights. Southwest Airlines, *Finding Low Fares*, https://www.southwest.com/html/travel-experience/finding-low-fares/ (last accessed November 2, 2015) ("You'll never find Southwest flights for sale on other travel sites. This allows us to keep our fares as low as possible by cutting out online travel agency fees."). The percentage of transpacific flights subject to the *Illinois Brick* rule is thus surely substantially greater than the percentage of all American travel purchases made through indirect purchases.

settlement class with a single set of class counsel, despite the intraclass conflict. Rule 23(a)(4), *Amchem*, and *Ortiz* forbid this, but so do *Churchill Village* and Rule 23(e). The class certifications must be reversed, and so must the settlement approval.

## II.  The unbounded class definition violates Rule 23.

The settlement classes certified by the district court include "[a]ll persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from[, *inter alia*, Appellees or a co-conspirator], at any time between January 1, 2000 and the Effective Date." ER2, ER7, ER12, ER17, ER22.

The "Effective Date" does not occur until the settlement agreement has been approved and the judgment entered by the district court "has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review." ER71, ER96-ER97, ER121, ER146, ER170. In other words, new class members have joined the class every day since the objection deadline passed, and continue to do so now. This class definition violates Rule 23(c)(2)(B), (e)(1), and (e)(5), and the implicit requirement of class ascertainability because it impermissibly includes those who purchased qualifying air travel after the notice program ended and after any opportunity to opt out or object passed. And though "ascertainability" is an inflammatory word in class-action law these days, Yang uses it here in its uncontroversial narrowest sense as recognized in *Mullins v. Direct Digital, LLC*:

> Vagueness is a problem because a court needs to be able to identify who will receive notice, who will share in any

> recovery, and who will be bound by a judgment. To avoid vagueness, class definitions generally need to identify a particular group, **harmed during a particular time frame**, in a particular location, in a particular way.

795 F.3d 654, 660 (7th Cir. 2015) (internal citation omitted and emphasis added).

Fed. R. Civ. Proc. 23(e)(1) requires the court to direct reasonable notice of the settlement to all members of the class who would be bound by it. Such notice lets class members assess the strengths and weaknesses of the case and the merits and demerits of the settlement in deciding whether to object or opt-out. 7B Charles Alan Wright et al., *Federal Practice and Procedure* § 1787 at 220 (2d ed. 1986); 2 *Newberg on Class Actions*, § 8.04 at 8–17 ("[T]he purpose [of notice is] allowing the parties to make conscious choices that affect their rights in a litigation context."). Unless each ticket reservation contains a notice of the settlement, and warns purchasers that by purchasing the transpacific air travel they become class members, those who have purchased (or will purchase) qualifying travel since the objection and opt-out deadlines in April 2015 did not receive adequate notice. Even if these late-purchasing class members somehow learned of the settlement, they were impermissibly denied the right of excluding themselves or objecting. *See* ER233 (setting opt-out and objection deadline of April 17, 2015). Notice here was questionable under the best of circumstances: the parties made no effort to identify individual class members. ER207.

A threshold requirement in any potential Rule 23 certification is that "the class must be sufficiently definite." *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, No. C 05-2320 SBA, 2006 U.S. Dist. LEXIS 69193, at *10 (N.D. Cal. Sept. 13, 2006); *see also In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV-208, 2010 U.S. Dist. LEXIS 94223,

at *14-*15 (E.D. Tenn. Sept. 7, 2010) (named plaintiffs must constitute an identifiable, unambiguous class). This means that every class definition should include at least: (1) a specification of the particular group at a particular time frame and location who were harmed in a particular way; and (2) a method of definition that allows the court to ascertain its membership. *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 455 (D.N.J. 2009). A class definition without a definite end date, bounded *de facto* by the issuance of an affirmance at an indeterminate future end date, violates these principles.

Most courts that have rigorously analyzed the issue, including district courts in this Circuit, have reached the same conclusion: proposed classes with no fixed end date must be denied certification. *See Zeisel v. Diamond Foods*, No. C 10-01192, 2011 U.S. Dist. LEXIS 113550, at *5 (N.D. Cal. Oct. 3, 2011); *Cruz v. Dollar Tree Stores, Inc.*, No. 07-2050 2009 U.S. Dist. LEXIS 62817, at *3–5 (N.D. Cal. July 2, 2009); *In re Wal-Mart Stores, Inc.*, No. 06-02069, 2008 U.S. Dist. LEXIS 109446, at * 15–16 (N.D. Cal. May 2, 2008); *Wike v. Vertrue, Inc.*, No. 3:06-00204, 2010 U.S. Dist. LEXIS 96700, at *11–12 (M.D. Tenn. Sept. 15, 2010); *Alaniz v. Saginaw Count.*, No. 05-10323, 2009 U.S. Dist. LEXIS 43340, at *5 (E.D. Mich. May 21, 2009); *Trollinger v. Tyson Foods, Inc.*, No. 4:02-CV-23, 2007 U.S. Dist. LEXIS 88866, at *8–11 (E.D. Tenn. Dec. 3, 2007); *Vickers v. GMC*, 204 F.R.D. 476, 478 (D. Kan. 2001); *Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281, 285–86 (W.D. Mich. 2001); *Mueller v. CBS, Inc.*, 200 F.R.D. 227, 236 (W.D. Pa. 2001); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 n.2 (S.D.N.Y. 2001). These cases are in line with the Supreme Court's "recogni[tion of] the gravity of the question whether class action notice sufficient under the Constitution and Rule 23 could ever be given to legions so unselfconscious and amorphous." *Amchem*, 521 U.S. at 628.

There are sound reasons for requiring a definite temporal boundary. *First*, Rule 23's notice requirement allows class members a sound platform for assessing the merits and demerits of the settlement in deciding whether to object or opt-out. Those who purchase qualifying air travel after the completion of the notice program will be deprived of their rightful notice. *Second*, even if the late-purchasing class members were somehow to learn of the settlement, the objection and opt-out deadline will have passed by that time. These class members will be deprived of their Rule 23(e)(5) right of objection and Rule 23(c)(2)(B) right to exclude themselves. *See* Rhonda Wasserman, *Future Claimants and the Quest for Global Peace*, 64 EMORY L. J. 531, 543-560 (2014) (explaining that "courts cannot enter class action judgments that bind unknowing, exposure-unaware, and contingent future claimants regarding claims for money damages [because] [t]wo constitutional requirements prove insurmountable: notice and adequate representation.")

Nor do class members like Ms. Yang escape unharmed from this overbroad class definition. The faulty certification means that the settlement fund will incur extra claims thus diluting each claimant's *pro rata* share.

The district court committed reversible error by failing to require the parties to amend the class definitions to bind only those who purchased qualifying air travel in advance of the notice program, so that the program would be capable of targeting them and they would have an opportunity to object to or opt-out of the settlements if they wished.

**Conclusion**

At a minimum, the district court failed to apply the correct standard of law, and remand is required for consideration of *Amchem*. But this Court can go farther: these single settlement classes cannot and should not be certified, and this Court should vacate and reverse the settlement approval and the class certification.

Dated:  November 4, 2015                   Respectfully submitted,

*/s/ Theodore H. Frank*
Theodore H. Frank
Anna St. John
COMPETITIVE ENTERPRISE INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1899 L Street NW, 12th Floor
Washington, DC 20036
Telephone:  (202) 331-2263
Email:  ted.frank@cei.org
Email:  anna.stjohn@cei.org

*Attorneys for Appellant Amy Yang*

## Statement of Related Cases
## Under Circuit Rule 28-2.6

*Wortman, et al. v. All Nippon Airways*, No. 14-80164, *Wortman, et al. v. Philippine Airlines, Inc., et al.*, No. 14-80166, *Wortman, et al. v. Vietnam Airlines, et al.*, No. 11-16425 and *Wortman, et al. v. Thai Airways International, et al.*, No. 11-16340 arise out of the same case in the district court. On April 10, 2015, the court granted petitioners' motion for permission to appeal an interlocutory order dated September 23, 2014, pursuant to 28 U.S.C. § 1292(b) in appeal Nos. 14-80164 and 14-80166. Appeal Nos. 11-16425 and 11-16340 were dismissed for lack of appellate jurisdiction on August 9, 2011.

On information and belief, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 14-16342, raises similar Rule 23(a)(4) issues as this case. The briefing schedule in that case was vacated on September 25. 2015, and briefing in this case is now scheduled to be completed ahead of that one.

Executed on November 4, 2015.     */s/ Theodore H. Frank*
                                   Theodore H. Frank

## Certificate of Compliance
## with Federal Rule of Appellate Procedure 32(a)(7) and Circuit Rule 32-1

1.     This brief complies with the type-volume limitation of Fed. R. App. Proc. 32(a)(7)(B) because this brief contains 11,441 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. Proc. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Garamond font.

Executed on November 4, 2015.

/s/ Theodore H. Frank
Theodore H. Frank
COMPETITIVE ENTERPRISE INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1899 L Street NW, 12th Floor
Washington, DC 20036
Telephone:  (202) 331-2263
Email:  ted.frank@cei.org

*Attorney for Appellant Amy Yang*

**Proof of Service**

I hereby certify that on November 4, 2015, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which will provide notification of such filing to all who are ECF-registered filers.

I further certify that on November 4, 2015, I served the foregoing by first-class U.S. Mail, postage pre-paid, to the following non-CM/ECF participant:

Charles R. Price
Latham & Watkins LLP
555 Eleventh Street, NW
Washington, DC 20004

*/s/ Theodore H. Frank*
Theodore H. Frank
COMPETITIVE ENTERPRISE INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1899 L Street NW, 12th Floor
Washington, DC 20036
Telephone: (202) 331-2263
Email: ted.frank@cei.org

*Attorney for Appellant Amy Yang*